[Civ. No. 6585. First Appellate District, Division Two.—December 18, 1928.]

W. S. SELVAGE, Respondent, v. FRED J. MAURER & SON (a Corporation), Appellant.

Henry L. Ford and J. T. Fraser for Appellant.

W. Ernest Dickson for Respondent.

KOFORD, P. J.—Plaintiff recovered a judgment for $2,251.81 for performing certain excavation work. Trial was by jury. Defendant appeals from the judgment, assigning errors which largely involve questions of fact.

Maurer & Son were awarded a contract by the United States government to construct a United States Coast Guard station consisting of a marine ways, a building and the excavation of a land approach on the ocean shore at Pt. Reyes, California. They sublet to Selvage, the plaintiff and respondent herein, the construction of the substructure (pile driving) and launchways for the sum of $3,000. This subcontract was in writing and provided, among other things, for partial payment of seventy-five per cent of the work completed on the 1st of each month at the request of Selvage. Selvage came to the scene and commenced to make ready for this work. It appeared that it was necessary for the land excavation to be completed before the pile driving for the substructure should be commenced. A. L. Maurer, the son mentioned in the corporate name of appellant, was acting as general superintendent - of the entire work covered by the government contract with Maurer & Son. Appellant asked Selvage to give a bid upon the excavation part of the work because the person' whom appellant had relied upon to do this work had failed to appear. Selvage bid $2,000 for the excavation work. A verbal agreement was made with Maurer & Son, accompanied by a brief written bid, signed by Selvage only, specifying the price and a very general description of the excavation work to be done. At the trial the parties differed materially upon what the verbal understanding was between them regarding progress payments on this work, regarding the furnishing of materials and equipment and as to whether Selvage had agreed to perform the work to the final satisfaction of the government engineer or only to carry out the orders and directions of A. L. Maurer. This subcontract was the basis of the complaint in the action. There were three counts. One for $2,000 as for the agreed price on an express contract, one for the same $2,000 as for the reasonable value of the same work and a third for $251.81 consisting of $150 for excavating rock, $66.06 for material paid for by Selvage which should have

been paid for by appellant and the balance for extra labor and excavation caused by appellant's misdirections for the doing of the excavation.

Selvage's testimony was to the effect that neither by contract nor by actual practice did he have anything to do with the government engineer. That the engineer would not recognize him as subcontractor, but dealt only with Maurer, the general contractor. That the engineer laid out lines and established stakes indicating to Maurer the extent and nature of the excavation required and Maurer, in turn, placing his own interpretation on these directions, indicated to Selvage in more detail how the work was to be done. That owing to mistakes of Maurer, Selvage was required to finish the surface of the cut twice, but that finally he finished the job to the last finishing touch to the expressed satisfaction of Maurer. Thereupon, being greatly dissatisfied because he had been unable to obtain any progress payments on the work, he demanded his pay. He testified that the verbal contract was that he should have seventy-five per cent progress payments monthly just as provided in his written contract for the substructure. Appellant positively declared that no payments would be made until it had received payment from the government. His pay not being forthcoming upon the $2,000 contract, Selvage declared he would not commence with the performance of his $3,000 contract for the substructure and launchways until paid for his excavation work to date.

It was appellant's claim and testimony that Selvage was required to finish the excavation to the satisfaction of the government engineer and the plans and specifications of the government contract; that Maurer's acceptance of the work was necessarily conditioned upon the final approval of the government engineer; that eventually the government engineer came and decided that the grading was not executed up to the lines designated by him; that Selvage was entitled to no payment until Maurer had received payment from the government; that Selvage therefore failed to complete the excavation according to contract, but that he had abandoned it uncompleted; that he also unjustifiably abandoned the contract for the substructure and launchways. Defendant claimed damages by way of counterclaim and cross-complaint for these alleged breaches by Selvage. The

jury found a verdict for the plaintiff for the full amount sued for and allowed defendant nothing upon the offsets pleaded.

■ At the conclusion of plaintiff's case in chief defendant moved for a nonsuit upon the second cause of action which was for *quantum meruit*, claiming that plaintiff's case rested upon an express contract, This motion was denied. Defendant then immediately moved for a nonsuit upon the first cause of action, claiming that the court had decided by the last-mentioned ruling that there was no express contract or that the first cause of action had not been proven. Appellant disclaims any motion to compel an election, but claims that his motions for nonsuit presented a pure question of law for the court. If the law did not require respondent to make an election it is difficult to see how the court was obliged to do so for him by granting one of defendant's motions for nonsuit. The testimony on behalf of the plaintiff would have sustained a verdict upon either count, the one sustained depending upon what view of the testimony the jury approved. This was a question of fact for the jury and not for the court to decide. The court did not err in submitting both counts to the jury under proper instructions. Where no election was required both issues could go to the jury. (1 Bancroft's Code Pleading, secs. 108, 655; *Cowan* v. *Abbott*, 92 Cal. 100 [28 Pac. 213]; *Estrella Vineyard Co.* v. *Butler*, 125 Cal. 232 [57 Pac. 980]; *Tanforan* v. *Tanforan*, 173 Cal. 270 [159 Pac. 709].)

■ Appellant next claims that Selvage abandoned his grading contract before completion and hence should not recover at all or at least not the full contract price. This is entirely a question of fact well within the jury's province under the testimony. There was ample evidence to support the decision of fact that Selvage had fully completed his contract with appellant even though the excavation did not fully satisfy the plans and grade lines of the appellant's contract with the government. The evidence does not compel the conclusion that the requirements of the two contracts with respect to excavation or grading were identical.

■ Appellant's last point is that damages should have been awarded it because plaintiff failed to commence the

performance of the substructure and launchways contract. Appellant testified that the cost of the labor in doing this work himself was $4,652.29. On the other hand, the government construction engineer who supervised and inspected the work and kept account of the amount of labor, testified that exclusive of the contractor's time the total labor spent in driving piles for the substructure and construction of the launchways was approximately $3,000 (the contract price) including the laying of rails (not in the Selvage contract). From this testimony the jury could conclude that appellant was inclined to greatly overestimate the cost of labor and therefore of other claimed damage and that in fact it was not damaged at all by respondent's failure to perform this contract. Appellant testified to items of cost of performing this work in addition to the item for labor (some of which, like the donkey-engine and its transportation, may not have been properly chargeable to this part of the work). These items, so far as the jury may have found them proper, may have been less than the labor of laying the rails. If so, the total cost to plaintiff would be found to be less than the contract price of $3,000. Again, these items may have been held unreasonably large, there being no testimony of their reasonable value. The question of damage was, therefore, a question of fact for the jury. The jury could decide from the testimony that appellant completed the work called for by this contract at a cost equal to or less than the contract price of $3,000 and for that reason allow nothing to defendant as offset.

There was also ample testimony from which the jury could decide that appellant made it impossible for respondent to perform the substructure contract by failing to pay anything upon the excavation contract according to its terms. It was understood by the parties according to respondent's testimony that he needed the payments to finance and carry out the work. Appellant's positive declaration that progress payments and final payment would not be made until it had in turn been paid by the government would justify respondent in believing that the same attitude would be maintained by appellant during the performance of the substructure contract. Having decided, however, that the jury was justified in making no award upon appellant's offset because of failure of appellant to prove

damage, it is unnecessary for us to decide whether respondent was excused from performing the substructure contract on the theory of anticipatory breach or prevention of performance.

Judgment affirmed

Sturtevant, J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 14, 1929.

All the Justices concurred.